The next case on for argument is Washington National Insurance Company versus Obex Group LLC and Robert Katzenstein, excuse me, Katzenstein. Good morning, your honor. My name is Helen Kim and I'm here on behalf of Appellant Obex Group LLC and Randall Katzenstein. I take it the arbitration has been settled, it's over, so we have been told. It's not so? That's what I received the same letter that the Court did, your honor, yes. As far as we know, the underlying dispute is over. Yes, your honor. What is at stake for you if it's all over? Assuming it's right, there's no, why do you care anymore? It's not clear. You want your documents back, you want some money, what do you want? We want both. We want our documents back and we want to, we want to, we would like Obex and Mr. Katzenstein to be put back in the status quo ante, which means to obtain the reasonable compensation and monetary sanctions that he would otherwise have been subject to, your honor. I mean, they have already. Assuming that nothing further is going to happen, we're all, this is all retrospective, nothing further is going to happen because the case itself is over. We're just looking at what happened previously and whatever, I mean, is there any question about your getting the documents back if it's over, do you know? Have you asked? Well, your honor, first of all, the controversy is not moot. It's certainly not moot. And I would refer the court to the church of Scientology versus United States. Ask, answer Judge Sachs question. Okay. What is it that your client would like, Ms. Kim? We would like the documents back and we would like the, the, the, the relief that we would have gotten if the court had not, the district court had not abdicated its duties in deferring to the arbitral panel. So we want the monetary sanctions. The relief you would have gotten is? We, well, we believe that if the district court had exercised, exercised its obligations under Rule 45, it would have, at a minimum, required that OBECs receive reasonable compensation for, um, producing the records, not just producing the records, but having to defend, uh, uh, summons that called for more than 270,000 documents. And that's what the, the, that's what the, whatever their expense has been in, uh, engaging in these proceedings today. Correct. Your honor. That's exactly right. Your honor. I mean, uh, there is no dispute here that the summonses that were issued, well, first of all, OBECs initially complied, complied with the initial summonses in February of 2018 and produced 15,000 pages of documents. That, uh, summons included seven very, very broad requests, which Washington National and Bankers Consico then agreed to withdraw in favor of specific search terms, which our client, which Mr., uh, Katzenstein and OBECs complied with. That's what resulted in the 15,000, uh, pages being produced. Then they came back and reasserted all seven. Yes. At that first stage, did you resist the, I just don't remember. We did not. We tried, we negotiated, we, we, we reached a deal, we, we, we negotiated, said this is way overbroad. This is going to call for hundreds of thousands of documents, something like 56 gigabytes of data. It was every email. If it had stopped there. If it had stopped there. We wouldn't be here. Correct. Your honor. We would not be here. We are here only because, uh, because Washington National decided to reassert the very request that they had agreed to withdraw and then refused to compensate. Uh, well, for first of all, they refused to, uh, adhere to the original agreement, which was to, uh, to limit themselves to documents that concerned Beachwood. Now, in this case, this was an arbitration regarding Beachwood re and, and therefore, uh, you know, we were amenable to producing any documents that OBECs had that concerned Beachwood re. In the subsequent summons, however, they sought documents, every email that Mr. Kaffenstein ever wrote. And now, I just, I think it bears emphasis that OBECs was not a party to the arbitration. OBECs is a non-party, did not consent to arbitration. It had no legal obligation to this arbitration panel except as Section 7 of the Federal Arbitration Act provides. And they, under Section 7, they could only be compelled to produce documents in the same manner provided by law for securing the attendance of witnesses in the courts of the United States. So that in turn implicates Rule 45. And Rule 45 of the Federal Rules of Civil Procedure are, are designed to protect non-party witnesses such as OBECs. So in answer to your question, uh, Judge Sack, OBECs has been hurt to the tune of over $250,000 in, in not having its objections ruled upon by the district court being punted to the arbitral panel, which in turn refused to hear OBECs' request for reasonable compensation until the conclusion of the arbitration. And then it proceeded to dismiss the arbitration without ruling on OBECs' request for, for reasonable compensation. Now, we objected to being referred to the arbitration panel because as non-parties, OBECs has no right of review, no right of judicial review from anything that an arbitration panel would have ruled. So it's not sufficient for us to have to go back to the arbitration panel for relief. We say we were entitled to have that relief from the district court. So since, since this action has, the underlying arbitration has been dismissed, we ask that this court, which has the right, the right to, to grant equitable relief under Church of Scientology versus United States, to grant that relief. And we would ask that this court give OBECs the opportunity to make that motion for relief, which the district court refused to hear. So the other issue that I wanted to cover in my brief time, which I think is an issue that has never been, it's a de novo issue, has never been reviewed by this Court, is the issue of subject matter jurisdiction. I think it is critical because there has never been a case. If there is diversity jurisdiction, does it matter? If there is, it doesn't matter. But we, it is our position that there is no diversity. Yes, there is no diversity jurisdiction because, Your Honor, in Dozier, in Vaden versus Discover Bank and in Dozier, well, this Court made clear in Dozier that for all remedies under the Federal Arbitration Act, the Court is to look at the underlying dispute in the arbitration. Well, in Section, in a Section 7 dispute, the underlying dispute in the arbitration is very clear. It's not Indiana versus New York in there? No, Your Honor. It's not Indiana. And I'll tell you why. In, when we, when I was negotiating the terms of that subpoena, the initial subpoena, I was negotiating with counsel for both Washington National and Bankers Consico. Bankers Consico sought the February summons. They sought the August summons. The deal was with both Washington National and Bankers Consico. Bankers Consico is a New York corporation. What about the case as it was before the district court? Was that? Well, we argued that Bankers Consico was an indispensable party. And did you get a ruling on that? The Court said that it wasn't an indispensable party, that he could only. You're saying that's wrong. It was an indispensable party, and therefore, there was no. Actually, it's wrong for a different reason. We say that he was required to look at the parties to the underlying arbitration. And in the parties, among the parties to the underlying arbitration, the Washington National was the only non-New York entity. All of the other entities and individuals were residents of New York. And this is exactly the type of illogical result that Dozier, that the Second Circuit relied upon in Dozier to say that you have to look to the entire, I mean, entire underlying dispute to prevent absurd and illogical discrepancies. So if you look at only the petition, the parties to the petition to compel compliance under Section 7, then what's going to, what happens as is in this case is there's only one party, that's Washington National, who could ever come to federal court to seek not only compliance under Section 7, but confirmation or vacatur of an arbitration award. None of the other parties to that arbitration, including Bankers Consico or any of the respondents, the substantive respondents to that underlying arbitration, could ever avail themselves of any of the provisions under the FAA. And that — There is a case, Second Circuit case called — Hermes. This AJO, I'm not sure how I'm pronouncing it currently. Oh. D-I-S-T-A-J-O. A-S. Which involved jurisdiction with respect to a FAA petition. And the court said, the Second Circuit said, that the court should look only to the citizenships of the parties in the action before it, meaning, quote, the parties to the petition to compel. So why isn't that reasonably analogous to what the court did here? Well, Your Honor, I would — I'm not familiar with that case. It wasn't cited by Washington National in its brief. However, I will say that there are certain circumstances, such as on a motion to petition to compel, are the parties to the underlying arbitration. In other words, there would be no inconsistency, because the parties to the petition to compel arbitration would be the very parties — would be one and the same. So there would be no inconsistency. Clearly, it wasn't the case in the case before the Second Circuit, or they wouldn't have had a rule on the issue they ruled on. Well, actually, I would respectfully disagree, because there was a similar case, Hermes v. Swain, where — and that is cited in the — in Washington National's brief, which was a petition to compel arbitration, where Judge Lynch, writing for the Second Circuit, held that the district court should look to the parties to the petition to compel arbitration, and not to the underlying dispute. But there, the underlying dispute that the parties wanted the court — to direct the court to were parties to a State court proceeding. There was not an underlying arbitration. They were the parties to a State court proceeding where there was an extraneous party who would have destroyed diversity jurisdiction. And in that context, the Second Circuit pointed out that that other party was not — was an — was not an indispensable party, because that other — it was an employment dispute. That other employee would not have been party to the underlying arbitration. So there are circumstances, Judge Reich, to break off when the petition to compel that were — where the underlying dispute, particularly if it's a State court proceeding, might include parties who would not otherwise be party to the arbitration. So I would say — but there are no cases that I'm aware of that involve a Section VII. I'll look — I'll — you know, if the Court will permit me, I will look at that Adagio case. If it's — if it's an article — I mean, Section VII case, I'd be happy to address that by letter. Ms. Kim, thank you. Thank you. You've reserved three minutes for rebuttal. Mr. Epstein. Good morning, Your Honors. If it pleases the Court, my name is Richard Epstein of Sils, Cummis & Gross for the Petitioner-slash-Epp-Hallie Washington National. The Federal Arbitration Act has two parts we've got to consider. Part number one is — and I accept this — unlike other Federal statutes, there is no jurisdictional grant within the Federal Arbitration Act. But at the same time, we have to look at the Supreme Court's decision in Moses H. Cohn and this Court's decision in the Archenega case that talks about the strong policy in favor of arbitration. So when you combine the two, you go, okay, we do need to show subject-matter jurisdiction, but what the district court should be looking at and what the district court properly looked at here is to look at a way to get — to meet the goals of the district court. So you have a situation where what the Respondents-slash-Appellants are asking for would undercut that strong Federal policy by making it extraordinarily difficult to do what 9 U.S.C. 7 says, which is if you have an arbitration summons and you need to enforce it, you bring it into the district court in which the arbitrators were sitting. So there are multiple ways this Court can get to that subject-matter jurisdiction. The first is diversity jurisdiction. Judge Rakoff referred to the Dijonjo case — God, I knew I was going to have trouble pronouncing that this morning — which is also referenced in the Second Circuit's decision in Hermes. And while that is an Article IV case, it does make quite clear that you don't do a look-through approach on diversity jurisdiction. Just for the heck of it, Article IV of what? Of the Federal Arbitration Act. The Federal Arbitration Act has different sections. So if you're looking to compel our — okay. 9 U.S.C. 9 U.S.C. 4. We're here on a 9 U.S.C. 7 case. But in Hermes, the Court's — the Second Circuit specifically rejected a look-through approach for diversity jurisdiction. There is no dispute here, and the factual record is clear. The parties to the petition that was before Judge Brachetti are diverse. Now, as we all know, it's diversity plus $75,000. Judge Brachetti made factual findings. Scalia, I'm sorry? Brachetti. Brachetti. Brachetti. My apologies. Judge Brachetti said that he made a factual finding. He said there are multiple ways you can get to the $75,000. First, the underlying arbitration at issue had $134 million in dispute. Second, the value of what was being sought here was greater than $75,000. Again, that's a clear error standard that you use when there's a finding as opposed to de novo finding, and there is no clear error here. And I would also cite to the Court not only to the Hunt Supreme Court decision on that, but I would also cite the Court to the Seton Insurance decision, which is a district court case, that similarly found greater than $75,000. Now, that's box one. And if the Court doesn't like that, I've got box two, which is Federal courts question jurisdiction. Now, there, you do look at what is going on in the underlying case. In this case, in the underlying case, there was a RICO dispute. RICO, as we all know, has Federal question jurisdiction. That should end the discussion. My alerted colleague, in her reply, said, well, it isn't sufficiently pled or it's not good enough. That's not respectfully the standard, and there's no case cited for that. The RICO case, the RICO claim was never dismissed by the arbitration panel and stayed in the case until the case was ultimately dismissed. There are other issues that were raised about whether the arbitration hearing under the arbitration summonses was in New York. I believe the factual record is quite clear on that. Likewise, I think there's no dispute here. And I'd refer to Judge Rakoff's decisions in the Objefel cases. Arbitration summonses are different from subpoenas. This was properly done with a hearing date set before three panel members, and therefore met all the procedural requirements of 9 U.S.C. 7. So, therefore, we then get to two last issues. Issue number one is, Judge, proceed at ease. Scalia, let me go back to your RICO point. Yes. Yes, Your Honor. Because your adversary, in her brief, in her reply brief, does cite a case, Town of West Hartford v. Operation Rescue, Second Circuit, 1990, which she says, in their parentheses, stands for the proposition that the RICO claim is too insubstantial to support subject matter jurisdiction. I haven't read that case, but do you have any comment about that? Your Honor, my comment would be that the Court does not substitute its judgment for the arbitration panel. There was no dismissal of that. Let me take a step back. If I have – if I come to the Federal court, let's say in Your Honor's district court, with a RICO claim, and that's my sole basis for jurisdiction, and then it gets knocked out, then, yes, the Court can say it no longer has jurisdiction and kick me to State court. But until – the Court has jurisdiction until it gets knocked out. That's my point, Your Honor. And there was never a decision by the arbitration panel saying, oh, no, no, no, that RICO claim is not sufficiently flat. That's where that decision would have to have been made. Yes, under the Federal Arbitration Act, with all due respect to this Court, we have to give deference to the arbitration panel. And that actually is a great segue into the issue raised by appellants regarding issues like relevance or undue burden. That is to be decided at the arbitration level. There is sufficient case law on this. The Shosha case in the Southern District, which was cited by Judge Vercetti. The American Federation case, which is a Sixth Circuit decision that we cite. And just the simple fact that the arbitration panel is in the best position to assess whether something is relevant, whether something is burdensome, whether something might be privileged. And here, and I point to the arbitration panel's order in this case, found that the information sought in the arbitration summonses was relevant. And again, deference should be given to that, which leads to the last issue, which is that the issue of fees and costs. Respectfully, there is no basis for this. The district court correctly found that the arguments raised below by the Respondents were meritless, frivolous, misleading, and confounding. That doesn't really give a good basis for awarding any type of fees. Second, the remedy, if somehow the summonses were improper, is the return of the documents. That's what the Second Circuit said in life receivables, and that's what the Supreme Court said in the Church's Scientology case. It's not for this Court to suddenly start having remedies that would contradict the American rule, which is each side pays for its own fees. And then I do have to address in that context the argument that's been made in the papers in here today that somehow there was an agreement made with the initial set of discovery that was somehow reneged upon. I would point the Court to JA-286 in the record, in which I specifically wrote, we will agree to the request to remove certain terms, but please note that we reserve the right to revisit this issue at a later date. What happened then was, as set forth in the record, we got documents from other non-parties that showed that Obex and Mr. Katzenstein were involved in this leveraging scheme and said, okay, we now need your other documents. So, therefore, there is no basis. First of all, there is no basis for any remedy because the summonses were properly done, but the only remedy here would be a remedy of returning of the documents. Thank you, Your Honor. Sotomayor, is that possible under current circumstances? The return of the documents? If this Court were to find that the summonses were improperly issued, yes, I have the documents. I would return them. Do you have any reason why you don't want to return them without being ordered to do so? I generally don't return documents to non-parties at the end of a proceeding I would have to discuss with my client about that. I've not been asked by any non-party to return documents that were provided during the arbitration proceedings. Just asking. Okay. I'm just trying to answer, Your Honors. Thank you. Thank you. Ms. Kim, you've reserved some time for rebuttal. Yes, Your Honor. I'd like to, first of all, address the RICO point, Your Honor. I mean, they didn't come in on Federal question jurisdiction. They argued that this was on diversity jurisdiction, and it's only in response to our pointing out that there was no diversity that they tried to argue RICO. But, in fact, I'll lead to your argument that, in your view, there was no diversity. Correct, Your Honor. And on the issue, I mean, there was absolutely, as the Court is aware, after RICO was enacted, there was a huge influx of cases of complaints that tried to invoke RICO. And as a result, there's a very substantial body of law in which the courts can look to see whether or not there's a RICO claim. So you can't just throw in the word RICO. I understand your argument about waiver, in effect, that they didn't raise it in timely fashion, only now. But, if we put that aside, if someone brings a charge under RICO, and it's, as often is the case with RICO, a totally frivolous claim, the Federal Court still has jurisdiction, subject matter jurisdiction, until and unless it decides that this claim is frivolous and, therefore, must be dismissed. But that's exactly what Tanner Hartford says, Your Honor, to the contrary, which is that the Court can, in fact, look at the face of the complaint to determine whether it really does support a complaint. Yes, it has jurisdiction to determine its jurisdiction. Correct. So here they're saying, assuming there's no waiver, that there was a RICO claim that was, that you say was frivolous, they say, who knows, because it was never addressed by the Federal. It was never addressed by the district court, but they, my point was, they never made any attempt to satisfy any of the elements of RICO, including, there was no allegation of a predicate act. There was no allegation of racketeering. So are you saying, let me make sure you, I understand your argument. Your argument is, let's put it in, forget about arbitration, just put it in the terms of it every day. So someone brings a RICO claim that on its face is frivolous, and that's the sole basis for Federal jurisdiction. You're saying that the Federal Court has no jurisdiction to say, this is a frivolous claim, and therefore I don't have jurisdiction over the case. But rather, the very filing of a frivolous claim deprives the court of even determining  Oh, no, Your Honor. That can't be the case. No, no, no. That's, of course. Absolutely not. Now, why isn't that the situation here? I say the opposite. They filed a, according to you, totally frivolous, insufficient RICO claim. But it was never dismissed. It was never thrown out. The court didn't address it. So why doesn't that provide Federal subject matter jurisdiction until and unless it is thrown out? I would say that the Federal Court has jurisdiction to determine whether it has jurisdiction and upon looking at the totally frivolous complaint, can determine that there is not a sufficient pleading of a RICO complaint. Where did it do that? Oh, in this case, it did not. Right. The district court did not do that. Right. But this court can do that. So what's happening here, Your Honor, is the district court didn't say that there was in the alternative Federal question jurisdiction. There was no finding. I understand that. But what they're doing is It's a favor argument, so to speak. Well, this court can examine its jurisdiction at any time, right? That's true. Okay. So Washington National is saying, oh, wait a minute. If you don't believe us on diversity jurisdiction, look at this other ground that the district court didn't rule upon, and so you have to accept that. And what I'm saying is that's not true. That's not so. In fact, this court can look at the face of the demand for arbitration and make the same determination that there is no — that the RICO was not sufficiently pled to support Federal question jurisdiction. That is my point. Normally, we review those decisions de novo after somebody has made them. Correct. Yes. But this court, since subject matter jurisdiction can be reviewed de novo at any point, at any level of all the way up to the Supreme Court, I would say that this court can make that determination itself. Thank you, Ms. Kim. Okay. And that concludes the reserve decision. Thank you, Your Honor. Thank you, Your Honor.